## C. S. DEAVER v. MILLARD NELSON.[1]

March 28, 1930.

No. 27,825.

[1] Reported in 230 N. W. 122.

*C. A. Youngquist* and *Albert Running,* for appellant.
*Paul C. Cooper* and *C. O. Dailey,* for respondent.

STONE, J.

Plaintiff appeals from an order denying his motion to vacate a default judgment.

The original plaintiff, I. C. Gilman, departed this life February 3, 1929. The action was commenced in February, 1928. Counsel say that it might have been noticed for trial in May but that, the plaintiff failing to do so, defendant noticed it for trial at the October term, 1928. For some reason not shown by the record, plaintiff's original attorney dropped out of the case, and another made a motion for a continuance on the ground of the illness of the plaintiff. That motion was denied, and defendant brought the action on for trial October 3, 1928, without any further appearance for plaintiff, and procured on his counterclaims judgment against the plaintiff for $2,524.90, which was entered November 10, 1928. A writ of execution was issued. Certain land of the plaintiff was levied upon and sale thereof was had April 17, 1929.

We think the record so far makes out a case for relief upon the ground of excusable neglect that it was an abuse of discretion to deny the motion. When the case was tried the plaintiff was 71 years old. The affidavit of the physician who attended him shows conclusively that he was then a very sick man. Some time before he had suffered a paralytic stroke. September 4, a month before the trial, the doctor "found him * * * in a state of physical collapse and exhaustion, half conscious and unable to stand, suffering from hardening of the arteries, high blood pressure and gangrene of his right foot." He was then removed to a hospital and kept there until September 20—confined to his bed. The doctor says that while he permitted his patient to make about three trips out of the village of Madelia during the last part of September, 1928,

for the purpose of giving attention to some cases on the calendar of the October, 1928, general term, he also warned him "that it would be dangerous to his life for him to go into court and take part in the trial of his cases * * *. His general condition was such that the stress and nervous excitement of a lawsuit would be apt to bring on a cerebral hemorrhage at any time, and affiant so informed said Gilman." The doctor further says that "his mental condition was such that he could not give his business affairs such consideration and attention as a normally prudent man would have given them in a normal state of mind. * * * His mental condition * * * was such that he necessarily was incapable of giving them proper attention, although he himself may have thought that he was capable of so doing. * * * He was in fact incapacitated from understanding and fully appreciating his rights, and fully appreciating the necessity of placing his own affairs in the hands of others for attention."

With the plaintiff in that condition the case was tried by default and judgment taken against him. But that is not all. The complaint declared upon three causes of action for rent and other demands arising out of a farm lease, wherein the plaintiff had been the lessor and defendant the lessee. The total amount demanded was $1,793.86. The answer first alleged payment generally and then sets up some counterclaims. To an extent we cannot ascertain the items used by defendant as the substance of counterclaim must probably be used by way of agreed offset to support his plea of payment. With all his counterclaims in the case defendant's prayer for judgment against plaintiff was for only $826.17. But at the trial the court dismissed a counterclaim which was for $1,600. Yet defendant had judgment for $2,524.90. It is difficult if not impossible so to construe the pleadings as to support any such result. That is an important circumstance suggesting that plaintiff is entitled to relief.

The power of the district court to "relieve a party from any judgment * * * taken against him through his mistake, inadvertence, surprise, or excusable neglect" is inherent. The statute (G. S. 1923 [2 Mason, 1927] § 9283) limits its exercise to one year

after notice. Even though a party seeking relief moves within the year permitted by statute, his application should be denied if he has been guilty of laches. On the record plaintiff cannot be convicted of that charge. The illness of the original plaintiff, beginning some time before the trial, continued in constantly aggravated form until February 3, 1929, when it resulted in his death. Letters of administration were issued to the present plaintiff April 6, 1929, and May 17, 1929, he was substituted as the plaintiff in this case. Immediately he made the motion now before us. We cannot escape the conclusions that the neglect of plaintiff which resulted in the judgment's being taken against him by default was plainly excusable, and that the present plaintiff, the administrator of his estate, has moved with due diligence.

However the judgment should not be vacated without the imposition of terms which will give defendant indemnity for his actual outlay in attending the trial, procuring the judgment and making the levy and sale thereunder. He was put to some traveling expense in order to be present at the trial. Under these circumstances the order is reversed with directions to vacate the judgment in question and all proceedings thereunder upon the payment of $100 by plaintiff to defendant within 20 days from the going down of the remittitur.

So ordered.